## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SATURNO, LLC D/B/A MODERN MALE BARBER SHOP, individually and on behalf of a class of similarly situated persons<br>375 Cowpath Road<br>Souderton, PA 18964,<br><br>           Plaintiff,<br><br>   v.<br><br>ERIE INSURANCE EXCHANGE<br>100 Erie Insurance Place<br>Erie, PA 16530,<br><br>         Defendant. | Civil Case No.:    21-172<br><br>**CLASS ACTION**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff, Saturno, LLC d/b/a Modern Male Barber Shop (hereinafter "Saturno" or "Plaintiff"), individually and on behalf of themselves and all others similarly situated, by and through their counsel, hereby complain and allege as follows:

### <u>INTRODUCTION</u>

1.      In response to the global COVID-19 pandemic, civil authorities in Pennsylvania and throughout the United States issued orders requiring residents to stay at home, shutting down restaurants and other businesses deemed non-essential, and prohibiting gatherings of large groups. In upholding the executive orders issued by Pennsylvania's Governor, the Pennsylvania Supreme Court recognized the COVID-19 pandemic as "a natural disaster and a catastrophe of massive proportions" that "involve[s] 'substantial damage to property, hardship, suffering or possible loss of life.'" *Friends of Danny DeVito v. Wolf*, No. 68 MM 2020, \_\_\_\_ A.3d \_\_\_\_, 2020 WL 1847100, at *12 (Pa. Apr. 13, 2020) (citations omitted). The Court further explained

that given the way the virus spreads, "any location . . . where two or more people can congregate is within the disaster area." *Id.* at *13.

2.     While necessary to slow the spread of the novel coronavirus, these orders have had a devastating effect on businesses, such as Plaintiff's, which have been forced to suspend business operations.

3.     To protect from losses caused by situations like this, Plaintiff and other similarly situated nationwide Class members obtained insurance policies from Defendant that included business interruption coverage. In breach of the insurance obligations Defendant undertook in exchange for premium payments, which Plaintiff and Class members paid, Defendant has wrongfully denied Plaintiff's and Class members' insurance claims arising from the interruption of Plaintiff's and Class members' businesses.

## PARTIES

4.     Plaintiff, Saturno, LLC d/b/a Modern Male Barber Shop (hereinafter "Saturno" or "Plaintiff"), is a business entity organized under the laws of Pennsylvania with their place of business in Souderton, Pennsylvania. Saturno runs Modern Male Barber Shop, a barber shop and men's grooming establishment, in Montgomery County, Pennsylvania.

5.     Defendant Erie Insurance Exchange ("Erie" or "Defendant") is a reciprocal insurance exchange organized under the laws of Pennsylvania with its principal place of business in Erie, Pennsylvania.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and at least one member of the Class are citizens of different states and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

7.      Venue is proper in this District under 28 U.S.C. § 1391, because Defendant resides in this District and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## FACTUAL ALLEGATIONS

### The COVID-19 Pandemic

8.      In December 2019, a novel (new) coronavirus known as SARS-CoV-2 was first detected in Wuhan, Hubei Province, China, and which caused an outbreak of a disease now known as COVID-19.

9.      The coronavirus causing COVID-19 is thought to spread mainly from person to person, primarily through respiratory droplets produced when an infected person coughs or sneezes.[1]

10.      The coronavirus spread globally, and on January 30, 2020, the World Health Organization designated the COVID-19 outbreak as a Public Health Emergency of International Concern.[2]

11.      On January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19.[3]

---

[1] See generally CDC Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/faq.html (last visited January 4, 2021).

[2] https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov).

[3] Press Release, Secretary Azar Declares Public Health Emergency for United States for 2019 Novel Coronavirus (Jan. 31, 2020), available at https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html.

12. On March 13, 2020, the President of the United States issued a proclamation that the COVID-19 outbreak in the United States constitutes a national emergency.[4]

13. To date, there have been more than 20 million confirmed cases of COVID-19 in the United States, including more than 666,000 in Pennsylvania and more than 55,000 in Allegheny County.[5]

### Closure Orders Issued by Civil Authorities in Response to the COVID-19 Pandemic

14. In response to this public health crisis, every state made an emergency declaration by March 16, 2020. Moreover, civil authorities in nearly every state also ordered some form of social distancing measures, including stay-at-home orders restrictions on large gatherings and orders closing or restricting service at restaurants and bars except for takeout and delivery

15. In Pennsylvania, on March 6, 2020, Governor Tom Wolf issued a Proclamation of Disaster Emergency, calling the COVID-19 pandemic a "threat of imminent disaster and emergency."[6]

16. On March 19, 2020, Governor Wolf issued an Executive Order, closing all businesses in Pennsylvania deemed to be non-life-sustaining.[7]

17. On March 23, 2020, Governor Wolf issued an Executive Order ordering all individuals residing in Allegheny County, Bucks County, Chester County, Delaware County,

---

[4] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[5] *See* Johns Hopkins Coronavirus Resource Center, available at https://coronavirus.jhu.edu/map.html (last visited January 4, 2021).

[6] https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[7] https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf.

Monroe County, Montgomery County, and Philadelphia County to stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services.[8] The Pennsylvania Department of Health issued a similar order the same day.[9]

18.     On April 1, 2020, Governor Wolf issued an Executive Order and the Pennsylvania Department of Health issued an order extending their respective "stay at home" orders to all counties in Pennsylvania.[10]

19.     On May 7, 2020, Governor Wolf issued an Executive Order and the Pennsylvania Department of Health issued an order extending their respective "stay at home" orders until June 4, 2020.[11]

20.     In *Friends of Danny DeVito v. Wolf*, No. 68 MM 2020, ____ A.3d ____, 2020 WL 1847100, at *12 (Pa. Apr. 13, 2020), businesses challenged the authority of the Governor to issue the Executive Orders discussed above in response to the COVID-19 pandemic. Specifically, the businesses challenged whether the orders were properly issued pursuant to the Emergency Code, which only applied to "disasters" defined as "'[a] man-made disaster, natural

---

[8] https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-TWW-COVID-19-Stay-at-Home-Order.pdf.

[9] https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-SOH-Stay-at-Home-Order.pdf.

[10] https://www.governor.pa.gov/wp-content/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf; https://www.scribd.com/document/454418390/04-01-20-SOH-Statewide-Stay-at-Home-Order.

[11] https://www.governor.pa.gov/wp-content/uploads/2020/05/20200507-TWW-Stay-at-Home-Order-Amendment.pdf; https://www.governor.pa.gov/wp-content/uploads/2020/05/20200507-SOH-Stay-at-Home-Order-Amendment.pdf.

disaster or war-caused disaster.'" *DeVito*, 2020 WL 1847100, at *10 (quoting 35 Pa.C.S. §

7102). The Emergency Code further defines a "natural disaster" as

> Any hurricane, tornado, storm, flood, high water, wind-driven
> water, tidal wave, earthquake, landslide, mudslide, snowstorm,
> drought, fire, explosion or other catastrophe which results in
> substantial damage to property, hardship, suffering or possible loss
> of life.

*DeVito*, 2020 WL 1847100, at *10 (quoting 35 Pa.C.S. § 7102).

     21.    In sustaining the Governor's Executive Orders under the Emergency Code, the

Pennsylvania Supreme Court found that the

> . . . COVID-19 pandemic qualifies as a "natural disaster" under the
> Emergency Code for at least two reasons. First, the specific
> disasters in the definition of "natural disaster" themselves lack
> commonality, as while some are weather related (e.g., hurricane,
> tornado, storm), several others are not (tidal wave, earthquake, fire,
> explosion). ***To the contrary, the only commonality among the
> disparate types of specific disasters referenced is that they all
> involve "substantial damage to property, hardship, suffering or
> possible loss of life." In this respect, the COVID-19 pandemic is
> of the "same general nature or class as those specifically
> enumerated," and thus is included, rather than excluded, as a
> type of "natural disaster."***

*DeVito*, 2020 WL 1847100, at *12 (emphasis added). The Court concluded that "[t]he COVID-

19 pandemic is, by all definitions, a natural disaster and a catastrophe of massive proportions."

*Id.*

     22.    The Pennsylvania Supreme Court also held that Governor Wolf was within his

authority to declare the entire state a disaster area, explaining:

> The virus spreads primarily through person-to-person contact, has an incubation period of
> up to fourteen days, one in four carriers of the virus are asymptomatic, and the virus can
> live on surfaces for up to four days. Thus, any location (including Petitioners' businesses)
> where two or more people can congregate is within the disaster area.

*DeVito*, 2020 WL 1847100, at *13 (emphasis added).

23.     Like Pennsylvania, the presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments.

***Covered Losses Under the Policy***

24.     Defendant issued Plaintiff's Ultrapack Plus Policy No. Q970414573 for the policy period between April 25, 2019 and April 25, 2020 ("the Policy"). Defendant reissued an identical policy under the same number to Plaintiff for the policy period April 25, 2020 and April 25, 2021. A copy of the declaration page for the 2019-2020 policy is attached as Exhibit "A." A copy of the declaration page for the 2020-2021 policy is attached as Exhibit "B." A copy of the Policy is attached as Exhibit "C."

25.     Parts of the Policy are standardized forms that are used by Erie for all insureds having applicable coverage.

26.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

27.     Among the coverages provided by the Policy, which is currently in full effect, is business interruption insurance, which, generally, would indemnify Plaintiff for lost income, profits, and continuing operating expenses in the event that their businesses were shut down.

28.     Specifically, the Policy provides for business interruption or "Income Protection" coverage for "loss of 'income' and/or 'rental income' you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' or to your food truck or trailer when anywhere in the coverage

territory from a peril insured against." Ex. A, Ultrapack Plus Commercial Property Coverage

Part, Income Protection Coverage – Coverage 3, A (p. 21 of 57).

    29.    The Policy also provides extra expense coverage as follows:

> "Extra expense" coverage is provided at the premises described in the "Declarations."
>
> "Extra expense" means necessary expenses you incur due to partial or total "interruption of business" resulting directly from "loss" or damage to property on the premises described in the "Declarations" or to your food truck or trailer when anywhere in the coverage territory from a peril insured against. "Loss" or damage also includes property in the open, or in a vehicle, on the premises described in the "Declarations" or within 1,500 feet thereof, or to your food truck or trailer when anywhere in the coverage territory.
>
> We will pay necessary actual and necessary "extra expenses" (other than the expense to repair or replace property) sustained by you to:
>
> > 1.  Avoid or minimize the "interruption of business" and to continue our operations:
> >
> > > a.  At the premises described in the "Declarations" or
> > >
> > > b.  At replacement premises or at temporary locations, including:
> > >
> > > > 1) Relocation expenses; and
> > > >
> > > > 2) Cost to equip and operate the replace or temporary locations.
> > >
> > > c.  Anywhere in the coverage territory for your food truck or trailer.
> >
> > 2.  Minimize the "interruption of business" if you cannot continue your business operations to the extent it reduces the amount of loss that would have been payable under loss of "income" and/or "rental income."

Ex. A, Ultrapack Plus Commercial Property Coverage Part, Income Protection – Coverage 3, B

(p. 21 of 57).

30. The Policy also provides civil authority coverage as follows:

> When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" or access to your food truck or trailer when anywhere in the coverage territory provided that both of the following apply:
>
> a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" or your food truck or trailer when anywhere in the coverage territory are within that area but are not more than one mile for the damaged property; and
>
> b. The action of the civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ex. A, Ultrapack Plus Commercial Property Coverage Part, C.1., Additional Coverages, Civil Authority (p. 22 of 57).

31. Covered Causes of Loss is defined under the Policy as "direct physical 'loss', except 'loss as excluded or limited in this policy.'" Ex. A, Ultrapack Plus Commercial Property Coverage Part, Section II – Perils Insured Against (p. 22 of 57).

32. Beginning in March 2020, Plaintiff was forced to suspend business operations as a result of the COVID-19 pandemic and the related actions of civil authorities discussed above. This suspension has caused Plaintiff to suffer significant losses and incur significant expenses.

33. Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of the COVID-19 pandemic, "a natural disaster and a catastrophe of massive proportions" that "involve[s] 'substantial damage to property, hardship, suffering or possible loss of life,'" *DeVito,* 2020 WL 1847100, at *12 (Pa. Apr. 13, 2020)

(citations omitted), and the orders of civil authorities enacted in response to this natural disaster. Among other things, Plaintiff and the other Class members have been unable to use their property for its intended purpose, and they have been denied access to their property, causing a suspension of business operations on the premises and the function of their property to be nearly eliminated or destroyed.

34. The interruption of Plaintiff's and other Class members' businesses was not caused by any of the exclusions set forth in the applicable Policy.

35. Plaintiff provided notice of their losses to Defendant consistent with the terms and procedures of the Policy.

36. Notwithstanding the foregoing, Defendant's agent verbally denied Plaintiff's claims for business interruption losses under the Policy.

***Defendant's Uniform Conduct***

37. The COVID-19 pandemic is physically impacting private commercial property throughout the United States threatening the survival of thousands of restaurants, retail establishments, and other businesses that have had their business operations suspended or curtailed indefinitely by order of civil authorities.

38. Upon information and belief, Erie has, on a widescale and uniform basis, refused to pay its insureds under its business income, civil authority, and extra expense coverages for business income losses suffered due to COVID-19, orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.

39. Indeed, upon information and belief, no insurer intends to cover any losses caused by the COVID-19 pandemic. For example, on March 18, 2020, a bipartisan group of members of the U.S. House of Representatives sent a letter to the several insurance industry trade

associations, noting the devasting impact the orders of civil authorities in response to the

COVID-19 pandemic were having on American businesses and requesting that insurers cover

these financial losses, stating that "[b]usiness interruption insurance is intended to protect

business against income losses as a result of disruptions to their operations and recognizing

income losses due to COVID-19 will help sustain America's businesses through these turbulent

times, keep their doors open, and retain employees on the payroll."[12]

40.     The insurance industry leaders sent a joint response, rejecting the plea to cover

COVID-19 losses, explaining their position that "Business interruption policies do not, and were

not designed to, provide coverage against communicable diseases such as COVID-19."[13]

41.     A declaratory judgment determining that the business income, civil authority, and

extra expense coverages provided in common all-risk commercial property insurance policies

applies to the suspension, curtailment, and interruption of business operations resulting from

measures put into place by civil authorities is necessary to prevent the Plaintiff and similarly

situated Class members from being denied critical coverage for which they have paid.

## CLASS ALLEGATIONS

42.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, individually and on behalf of all others similarly situated.

43.     Plaintiff seeks to represent a nationwide class defined as:

> All persons or entitles that have entered into standard all-risk
> commercial property insurance policies with Erie to insure
> property throughout the United States, where such policies provide

---

[12] https://cunningham.house.gov/sites/cunningham.house.gov/files/wysiwyg_uploaded/
Signed%20BII%20Letter_Final.pdf

[13] Insurers Reject House Members' Request to Cover Uninsured COVID Business Losses,
Insurance Journal (Mar. 20, 2020), available at
https://www.insurancejournal.com/news/national/2020/03/20/561810.htm.

business income, civil authority, and extra expense coverages and do not exclude coverage for pandemics, and who have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19 (the "Class").

44. Excluded from the Class are Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

45. Plaintiff reserves the right to modify, expand, or amend the definition(s) of the Class following the discovery period and before the Court determines whether class certification is appropriate.

46. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

47. ***Numerosity - Federal Rule of Civil Procedure 23(a)(1).*** The Class is so numerous that joinder of all members is impracticable. Upon information and belief, Erie has sold thousands of insurance policies that include business income, civil authority and extra expense coverages, to insureds throughout the United States. While Plaintiff is informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

48. ***Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).*** There are questions of law or fact that are common to the Class and which

predominate over questions affecting any individual Class member. Common questions of law or fact include without limitation:

      i.      Whether Plaintiff and the Class members suffered a covered loss under the standard commercial property insurance policies issued to members of the Class;

      ii.      Whether Defendant wrongfully denied all claims based on COVID-19;

      iii.      Whether Defendant's business income coverage applies to a suspension of business caused by COVID-19 and/or related actions of civil authorities taken in response to the presence or threat of COVID-19;

      iv.      Whether Defendant's civil authority coverage applies to a loss of business income caused by the orders of local, municipal, city, county, and/or state governmental entities requiring the suspension of business during the outbreak of COVID-19 in the United States;

      v.      Whether Defendant's extra expense coverage applies to efforts to avoid or minimize a loss caused by COVID-19;

      vi.      Whether Defendant has breached its standard contracts of insurance through a uniform and blanket denial of all claims for business losses related to COVID-19 and/or the related actions of civil authorities taken in response to the presence or threat of COVID-19;

      vii.      Whether Plaintiff and the Class members suffered damages as a result of Defendant's actions; and

      viii.      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

49.     ***Typicality—Federal Rule of Civil Procedure 23(a)(3).*** The claims of Plaintiff are typical of the claims of the Class, which arise from the same wrongful conduct by Defendant. Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under their uniform insurance policies. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

50.     ***Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).*** Plaintiff will fairly and adequately protect the interests of the other Class members and has no interests adverse or antagonistic to the interests of the other members of the Class. Plaintiff has retained competent counsel who are experienced in the prosecution of complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Class will be fairly and adequately protected by Plaintiff and its counsel.

51.     ***Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).*** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's insurance coverages. The prosecution of separate actions by individual members of the Class would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

52.     ***Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).*** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class

members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

53. **_Superiority—Federal Rule of Civil Procedure 23(b)(3)._** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
**(On Behalf of Plaintiff and the Class)**

54. Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

55. Plaintiff brings this Count individually and on behalf of the other members of the Class.

56. Plaintiff's Policy, as well as those of the other Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiff's and the other Class members' losses for claims covered by the Policies.

57. In Plaintiff's Policy and the policies of other Class members, Erie agreed to pay for its insureds' actual loss of business income sustained due to the necessary suspension of its operations during the period of restoration.

58. Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities, which has

resulted in a suspension of their business operations causing Plaintiff and Class members to suffer losses of business income and incur expenses.

59.     These suspensions, losses, and expenses triggered business income coverage under Plaintiff's Policy and the policies of other Class members.

60.     Plaintiff and the other Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

61.     Erie has denied claims related to COVID-19 on a uniform and class-wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

62.     An actual case or controversy exists regarding Plaintiff's and the other Class members' rights and Erie's obligations under the Policies to reimburse Plaintiff and Class Members for the full amount of business income losses incurred by Plaintiff and the other Class members in connection with the suspension of their businesses stemming from orders intended to mitigate the COVID-19 pandemic.

63.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Class members seek a declaratory judgment from this Court declaring the following:

i.      Plaintiff's and the other Class members' business income losses incurred in connection with the closure order and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under their Policies; and

ii.     Erie is obligated to pay Plaintiff and other Class members for the full amount of

the business income losses incurred and to be incurred in connection with the

closure order during the period of restoration and the necessary interruption of

their businesses stemming from orders intended to mitigate the COVID-19

pandemic.

## COUNT II
## BREACH OF CONTRACT – BUSINESS INCOME COVERAGE
### (On Behalf of Plaintiff and the Class)

64.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set

forth herein.

65.     Plaintiff brings this Count individually and on behalf of the other members of the

Class.

66.     Plaintiff's Policy, as well as those of the other Class members, are contracts under

which Erie was paid premiums in exchange for its promise to pay Plaintiff's and the other Class

members' losses for claims covered by the Policy.

67.     In Plaintiff's Policy and the policies of other Class members, Erie agreed to pay

for its insureds' actual loss of business income sustained due to the necessary suspension of its

operations during the period of restoration.

68.     Plaintiff and the other Class members have suffered a direct physical loss of and

damage to their property as a result of COVID-19 and the orders of civil authorities, which has

resulted in a suspension of their business operations causing Plaintiff and the other Class

members to suffer losses of business income.

69.     These suspensions and losses triggered business income coverage under

Plaintiff's Policy and the policies of other Class members.

70.     Plaintiff and the other Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them.

71.     Erie, without justification, has refused performance under the Policy and other Class members' policies by denying coverage for these losses. Accordingly, Defendant is in breach of the Policy and other Class members' policies.

72.     By denying coverage for any business income losses incurred by Plaintiff and the other Class members as a result of the closure orders and orders intended to mitigate the COVID-19 pandemic, Erie has breached its coverage obligations under the Policy and other Class members' policies.

73.     As a result of Erie's breaches of the Policy and other Class members' policies, Plaintiff and the other Class members have sustained substantial damages for which Erie is liable, in an amount to be established at trial.

**COUNT III**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(On Behalf of Plaintiff and the Class)**

74.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

75.     Plaintiff brings this Count individually and on behalf of the other members of the Class.

76.     Plaintiff's Policy, as well as those of the other Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiff's and other Class members' losses and expenses for claims covered by the Policies.

77.     In Plaintiff's Policy and the policies of other Class members, Erie agreed to pay for losses of business income sustained and extra expenses incurred when, among other things, there is damage to property near the insured premises resulting from a covered cause of loss, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

78.     Plaintiff and the other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

79.     These losses satisfied all requirements to trigger civil authority coverage under Plaintiff's Policy and the policies of other Class members.

80.     Plaintiff and Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

81.     Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

82.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Erie's obligations under the Policies to reimburse Plaintiff and the other Class members for the full amount of covered civil authority losses and expenses incurred by Plaintiff and the other Class members in connection with closure orders and the necessary

interruption of their businesses stemming from the orders intended to mitigate the COVID-19
pandemic.

83.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Class members seek a
declaratory judgment from this Court declaring the following:

i.      Plaintiff and the other Class members' covered civil authority losses and expenses in
        connection with the closure orders and the necessary interruption of their businesses
        stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.     Erie is obligated to pay Plaintiff and the other Class members for the full amount of
        covered civil authority losses and expenses incurred and to be incurred in connection
        with the closure orders during the period of restoration and the necessary interruption
        of their businesses stemming from the COVID-19 pandemic.

**COUNT IV**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(On Behalf of Plaintiff and the Class)**

84.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set
forth herein.

85.     Plaintiff brings this Count individually and on behalf of the other members of the
Class.

86.     In Plaintiff's Policy and the policies of other Class members, Erie agreed to pay
for losses of business income sustained and extra expenses incurred when, among other things,
there is damage to property near the insured premises resulting from a covered cause of loss, the
civil authority prohibits access to property near the insured premises, and the civil authority
action is taken in response to dangerous physical conditions.

87.     Plaintiff and the other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

88.     These losses satisfied all requirements to trigger civil authority coverage under Plaintiff's Policy and the policies of other Class members.

89.     Plaintiff and the other members of the Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them.

90.     Erie, without justification, has refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendant is in breach of the Policy and other Class members' policies.

91.     By denying coverage for any business losses and expenses incurred by Plaintiff and other members of the Class in connection with the closure order and orders intended to mitigate the COVID-19 pandemic, Erie has breached its coverage obligations under the Policy and other Class members' policies.

92.     As a result of Erie's breaches of the Policy and other Class members' policies, Plaintiff and the other members of the Class have sustained substantial damages for which Erie is liable, in an amount to be established at trial.

### COUNT V
### DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
#### (On Behalf of Plaintiff and the Class)

93.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

94.     Plaintiff brings this Count individually and on behalf of the other members of the Class.

95.     Plaintiff's Policy, as well as those of other Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiff's and other Class members' losses for claims covered by the Policy.

96.     In Plaintiff's Policy and the policies of other Class members, Erie agreed to pay for extra expenses incurred by Plaintiff and the other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These extra expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

97.     Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff and the other Class members have incurred extra expenses.

98.     These expenses triggered extra expense coverage under Plaintiff's Policy and the policies of other Class members.

99.     Plaintiff and the other Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

100.     Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

101.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Erie's obligations under the Policies to reimburse Plaintiff and the other Class members for the full amount of extra expense losses incurred by Plaintiff and Class members in connection with closure orders and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID- 19 pandemic.

102.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Class members seek a declaratory judgment from this Court declaring the following:

i.      Plaintiff's and other Class members' extra expense losses incurred in connection with the closure orders and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID-19 pandemic are insured losses under their Policies; and

ii.     Erie is obligated to pay Plaintiff and other Class members for the full amount of the extra expense losses incurred and to be incurred in connection with the covered losses related to the closure orders during the period of restoration and the necessary interruption of their businesses stemming from orders intended to mitigate the COVID-19 pandemic.

**COUNT VI**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(On Behalf of Plaintiff and the Class)**

103.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

104.     Plaintiff brings this Count individually and on behalf of the other members of the Class.

105.     Plaintiff's Policy, as well as those of the other Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiff's and the other Class members' losses for claims covered by the Policy.

106.     In Plaintiff's Policy and the policies of other Class members, Erie agreed to pay for extra expenses incurred by Plaintiff and the other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These extra expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

107.     Plaintiff and the other Class members have suffered a direct physical loss of and damage to their property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff and the other Class members have incurred extra expenses.

108.     These expenses triggered extra expense coverage under Plaintiff's Policy and the policies of other Class members.

109.     Plaintiff and other members of the Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them.

110.     Erie, without justification, has refused performance under the Policy and other Class members' policies by denying coverage for these extra expenses. Accordingly, Defendant is in breach of the Policy and other Class members' policies.

111.    By denying coverage for any business losses incurred by Plaintiff and other members of the Class in connection with the closure order and orders intended to mitigate the COVID-19 pandemic, Erie has breached its coverage obligations under the Policy and other Class members' policies.

112.    As a result of Erie's breaches of the Policies, Plaintiff and the other members of the Class have sustained substantial damages for which Erie is liable, in an amount to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in its favor and against Defendant, as follows:

A.    Entering an Order certifying the proposed nationwide Class, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Class;

B.    Entering declaratory judgments on Counts I, III, and V in favor of Plaintiff and the members of the Class;

C.    Entering judgments on Counts II, IV, and VI in favor of Plaintiff and the members of the Class and awarding damages for breach of contract in an amount to be determined at trial;

D.    Ordering Defendant to pay attorneys' fees and costs of suit;

E.    Awarding pre-judgment and post-judgment interest; and

F.    Awarding such other and further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: February 10, 2021                           Respectfully Submitted,

**JACK GOODRICH & ASSOCIATES, P.C.**

*/s/ John P. Goodrich*
JOHN P. GOODRICH, Esquire
PA Attorney I.D. # 49648
Lauren R. Nichols, Esquire
PA Attorney I.D. #313520
429 Fourth Avenue, Suite 900
Pittsburgh, PA 15219
412-261-4663

**HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.**

*/s/ James C. Haggerty*
JAMES C. HAGGERTY, Esquire
PA Attorney I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600

**SCHMIT KRAMER, P.C.**

Scott Cooper - Trial Laptop 3 (Feb 10, 2021 08:48 EST)
SCOTT B. COOPER, Esquire
PA Attorney I.D. #70242
209 State Street
Harrisburg, PA 17101
(717) 232-6300

**SHUB LAW FIRM LLC**

*/s/ Jonathan Shub*
JONATHAN SHUB, Esquire*
PA Attorney I.D. # 53965
Kevin Laukaitis, Esquire*
PA Attorney I.D. #321670
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033

**BONI, ZACK & SNYDER LLC**

*/s/ Michael J. Boni*
MICHAEL J. BONI, Esquire
PA Attorney I.D.# 52983
Joshua D. Snyder, Esquire
PA Attorney I.D. # 88657
John E. Sindoni, Esquire
PA Attorney I.D. # 91729
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
610-822-0200

*Applications for admission pro hac vice to be filed.
*Attorneys for Plaintiff and the Putative Class*